**Narberto Angelo PORTOMENE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 15058.

United States Court of Appeals Fifth Circuit.

April 27, 1955.

Gino P. Negretti, Miami, Fla., for appellant.

E. David Rosen, Asst. U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

Appellant, charged in an indictment in two counts with unlawfully selling, dispensing, and distributing heroin on February 18th and February 20, 1953, in violation of the Harrison Anti-Narcotic Act, 26 U.S.C. § 2553(a), was convicted and sentenced on each count to serve three years, the sentences to run concurrently.

Appealing from that judgment, he is here presenting three grounds of error. The first of these is that, under the circumstances of this case, showing that the so-called informer had not merely given information to the officers but was the instrument they had used in making the claimed narcotics purchases from the defendant, it was error to deny the request of the defendant that his name be disclosed.

The second is that it was error to excuse the narcotic agent and witness, Rudd, from the rule, thus permitting

him to hear the testimony of the other witnesses before he took the stand.

A third error claimed is that the evidence was insufficient to support the verdict of the jury and that on his motion a verdict should have been instructed in his favor.

In presenting its case, the United States used four witnesses. Two of these, Rudd and Cox, narcotic agents, testified to the purported occurrences [1] on which the charges of February 18th and 20th were based; a third, Cooper, an agent trainee, testified with regard to the February 20th charge; and a fourth, Holman, a chemist, testified that the substances analyzed by him were heroin.

The testimony on behalf of the defendant consisted of his testimony that he had never dealt in narcotics, had not sold any narcotics, and had not passed any narcotics on the date and occasion to which the witnesses for the government testified; and the testimony of both the defendant and a witness, Olga De LaPaz, that they were of the opinion that the informer's name was Joe Vega, that on account of Olga there was bad blood between Joe Vega and the defendant, and that this furnished the motive for Vega's desiring to involve Portomene by false charges that he had dealt in narcotics.

We take up these assignments in inverse order.

Insisting that the testimony consisted of conclusions and opinions from what occurred rather than of facts which the witnesses actually saw, appellant urges upon us that the evidence was not sufficient to take the case to the jury and that his motion for a directed verdict should have been granted, the United States, with equal vigor, insists that this is essentially a fact case requiring submission to the jury and that it was not error to deny defendant's motion. We agree with the United States that this is so.

The second, that it was error to excuse Rudd from the rule, is no better taken. Whether it was proper to excuse him from the rule was confided to the discretion of the court, and no abuse of that discretion is made to appear.

When it comes, however, to the point mainly and most vigorously argued, that it was error to deny the defendant's request for the name of the informer to whom it was claimed the defendant had sold the narcotics, we are in no doubt that the appellant has the right of it. In Sorrentino v. United States, 9 Cir., 163 F.2d 627, the court pointed out the distinction between the case where the person called an informer is that and nothing more, in which case the de-

---

[1]. Briefly summarized, the testimony as to the February 18th date was that an unnamed informer was first searched to discover what, if anything he had on or about him resembling any form of narcotics, and that nothing of that kind was found; that he was furnished with $25 and carried to a place where he was sent to meet the defendant, at about 3:15 p. m.; that the informer and the defendant were observed talking and walking together; that the informer entered a small bar and at that time the witness lost sight of the defendant but kept the informer in view; that at that time the informer had made no contact with any person, that he stayed in the bar for about five minutes and then walked out of the bar and the witness followed him and watched him rejoin the defendant and that the witness saw the defendant

move his hand and the informer take his right hand and reach down, and he saw a flash of something white when their hands met; that the two then separated, and the witness followed the informer to a point where the informer handed him a small pack of a white powder in two envelopes.

As to the Feb. 20th date, while there was some difference in detail, the testimony in substance was the same. The witness Cox's testimony while corroborating that of the other witnesses as to the search of the informer and seeing the informer meet the defendant, did not corroborate the passing, he testified that he observed nothing except that they were together.

"Q: You saw no passing? A: No, I did not."

fendant would not have been entitled to have his identity disclosed, and a case such as this one, where the informer is the person to whom the defendant is said to have sold and dispensed the opium described in the indictment. In such a case information as to this person's identity was material to the defense, and the denial of the requested information was error.

To the same effect is United States v Conforti, 7 Cir., 200 F.2d 365. Indeed, the United States, in its brief, conceding that under the cited cases the ruling was erroneous, undertakes to avoid its effect by insisting that the error was harmless because, according to the statement of defendant's counsel and the testimony of defendant and his witnesses, the defendant knew the name of the informer and suffered no prejudice from the refusal of the government witness to divulge it.

We do not think that this will at all do. Who can say whether, deprived of the information to which he was entitled, the defendant in his lame and halting efforts to extricate himself from the situation in which the refusal to name the informer had placed him, did not greatly prejudice his defense by offering testimony which the jury may have thought was adduced to set up a straw man simply to knock him down. When, as here, a right, clear and unquestioned in principle and established by authority, is denied a defendant on trial for his liberty, it does not lie in the mouth of the government to say that, though the court erred by depriving the defendant of the information he sought and to which he was entitled, and thus visited a wrong upon him, the conviction should nevertheless stand because the amount and extent of the prejudice is not precisely shown. Appellate courts sit to right, not to condone such wrongs. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.